**WAJDA LAW GROUP, APC**
Nicholas M. Wajda (State Bar No. 259178)
11400 West Olympic Boulevard
Suite 200M
Los Angeles, California 90064
Telephone: 310-997-0471
Facsimile: 866-286-8433
E-Mail: nick@wajdalawgroup.com
*Attorney for the Plaintiff*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA
## OAKLAND DIVISION

| | |
|---|---|
| GILBERT PHILIP CASTILLO JR., <br><br> Plaintiff, <br><br> v. <br><br> GRAND TETON PROFESSIONALS LLC d/b/a www.WholeSaleShelfCorporations.com and www.TopTradelines.com, <br><br> Defendant. | CASE NO. 4:19-cv-01070 <br><br> **COMPLAINT FOR DAMAGES** <br><br> **1. VIOLATION OF THE TELEPHONE CONSUMER PROTECTION ACT PURSUANT TO 47 U.S.C. § 227.** <br><br> **JURY TRIAL DEMANDED** |

Plaintiff, Gilbert Philip Castillo Jr. ("Plaintiff"), by and through his undersigned counsel, submits the following civil action against Defendant, GRAND TETON PROFESSIONALS LLC, dba www.Wholesaleshelfcorporations.com and www.TopTradeLines.com as a result of Defendant's violations of the Telephone Consumer Protection Act:

### PRELIMINARY STATEMENT

1.      This is a civil action for damages and injunctive relief brought by Plaintiff against Defendant for violations of the Telephone Consumer Protection Act ("TCPA"), 47 USC § 227, *et seq*. The TCPA makes it unlawful for a person to call another person's cellular telephone using an "automatic telephone dialing system" ("ATDS") without the express consent

of the person being called.  47 U.S.C. § 227(b)(1)(A)(iii).  A text message is a "call" for purposes of the TCPA.  *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 952-54 (9th Cir. 2009).

2.      As detailed below, Defendant violated the TCPA by using an ATDS to send Plaintiff almost a dozen telemarketing text messages where Defendant did not have Plaintiff's prior express consent to send the telemarketing text messages.

3.      Thereafter, even after Plaintiff told Defendant on more than one occasion to "stop texting me", Defendant continued to send him over a dozen unwanted telemarketing messages.

4.      As detailed below, Plaintiff did not consent to Defendant's telemarketing messages because Plaintiff did not "agree" or "click" any visible terms and conditions that authorized Defendant to send the telemarketing messages. Further, this civil action is not prohibited by any arbitration agreement, because Plaintiff did not "agree" or "click" any visible terms and conditions that someone how included an arbitration clause.

## PARTIES, JURISDICTION AND VENUE

5.      Plaintiff is a resident of the State of California.

6.      Plaintiff is a natural "person" as defined by 47 U.S.C. §153(39), which provides that "[t]he term 'person' includes an individual, partnership, association, joint-stock company, trust, or corporation."

7.      Plaintiff has filed this civil action as an individual claim, but reserves the right to amend this civil action to assert his claims as a class action to represent similarly situated persons who have received unsolicited telemarketing messages from Defendant.

8.      Defendant GRAND TETON PROFESSIONALS LLC ("GTP") is a natural "person" as defined by 47 U.S.C. §153(39).

9.      GTP is incorporated in the State of Wyoming.

10.     Documents maintained and searchable on the State of Wyoming's Secretary of State website identify GTP's principle business address as **261 South Main St Suite 335, Newtown, CT, 06470.**

11.     As evidenced by the below screen capture taken on February 21, 2019, GTP's "Office" address is **261 South Main St Suite 335, Newtown, CT, 06470.**



12.     GTP's registered agent is Registered Agents Inc., 30 N Gould St Ste R Sheridan, WY 82801.  The email of GTP's registered agent is reports@registeredagentsinc.com.

13.     GTP conducts business in the state of California.

14.     GTP's website promotes itself by claiming that it provides what to help persons "improve your finances and get funded[]":



15.     As demonstrated by the below screen capture taken on February 21, 2019, GTP's website touts a least six "Brands" under the dropdown tab "Our Brands":



16.     In particular, GTP conducts business as Wholesale Shelf Corporations.

17.     As demonstrated by the below screen capture taken on February 21, 2019, GTP's website, GTP describes Wholesale Shelf Corporations as involving "Shelf Corporations", also known as "Aged Corporations" which it states "are legal corporate entities which were incorporated and left to sit on the 'shelf' waiting for a buyer, for two years to many more":



18.     GTP, by and through Wholesale Shelf Corporations, and on its own, conducts business from the following website address:  www.Wholesaleshelfcorporations.com.

19.     Wholesale Shelf Corporations conducts business from the following website address:  www.Wholesaleshelfcorporations.com.

20.     As evidenced by the below screen capture taken on February 21, 2019, Wholesale Shelf Corporation lists is "office" address as **261 South Main St Suite 335, Newtown, CT, 06470:**



21.     GTP, by and through Top Tradelines, and on its own, conducts business from the following website address:  www.toptradelines.com.

22.     On information and belief, Douglas Filter  is GTP's Manager.

23.     As demonstrated by the below screen capture taken on February 21, 2019, GTP's website describes that its Brand Top Tradelines provides "a fast, legal and permanent solution to powering up your credit scores so you can enjoy life on your own terms":



24.     As evidenced by the below screen capture taken on February 21, 2019, Top Trade Lines lists its "office" address as 261 South Main St Suite 335, Newtown, CT, 06470:



25.     Subject matter jurisdiction exists pursuant to 28 U.S.C. §§1331 and 1337 because this is a civil action for damages arising pursuant to the TCPA and this case arises out of violation of federal law. *Mims v. Arrow Fin. Servs., LLC,* 132 S. Ct. 740 (2012).

26.     28 U.S.C. §1367 provides supplemental jurisdiction for certain state law claims.

27.      Venue is proper in this District pursuant to 28 U.S.C. §1391 because Plaintiff resides in this District, GTP transact business in this District, and Plaintiff received GTP's unlawful telemarketing messages in this District.

### SUMMARY OF THE TCPA AND THE NATURE OF THE TEXT MESSAGES

28.     Defendant violated 47 U.S.C. §227(b)(1)(A) by using an automatic telephone dialing system ("ATDS") to send robotic text messages to Plaintiff's cellular telephone number, 925.XXX.8287, without his consent.

29.     To the best of Plaintiff's knowledge, belief and recollection, he has never provided GTP with consent and/or express permission to text Plaintiff's cellular phone number and Plaintiff has never had an established business relationship with GTP within the meaning of the TCPA.

30.     "Prior express consent" under the TCPA is "consent that is clearly and unmistakably stated." *Satterfield*, 569 F.3d at 955; *Charkchyan v. EZ Capital*, U.S. Dist. LEXIS 76560, 2015 WL 3660315, at *3 (C.D. Cal. June 11, 2015).

31.     Moreover, "[t]he Federal Communications Commission ('FCC'), tasked with instituting implementing regulations for the TCPA, added an express written consent requirement in the case of messages that 'include[] or introduce[] an advertisement or constitute[] telemarketing.'" *Meyer v. Bebe Stores, Inc*., 2015 U.S. Dist. LEXIS 12060, 2015 WL 431148, at *3 (N.D. Cal. Feb. 2, 2015) (citing 47 C.F.R. § 64.1200(a)(2)).

32.     The term "advertisement" includes "any material advertising the commercial availability or quality of any property, goods, or services." 47 C.F.R. § 64.1200(f)(1). "Telemarketing" means the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." Id. § 64.1200(f)(12).

33.     The text messages sent to and received by Plaintiff advertised and promoted products and services that were intended to "boost . . . credit scores", increase "credit limits", "find more RELIABLE credit and funding experts" and "show you how to get up to $500k" in credit.

34.     Establishing prior express consent of the called party is an affirmative defense for which the defendant bears the burden of proof

35.     Defendant plausibly created and sent the text messages identified below by way of formatted SMS short code, which advertised and promoted various commercial services, in a scripted manner, akin to an impersonal, "boiler-room sale pitch" – albeit via a text based sales pitch -  as opposed to a telephonic "cold call."

36.     None of the text messages were typed out by a human in real time, letter for letter, prior to them being sent to Plaintiff.  Rather, the messages were automatically generated

to insert Plaintiff' name into a pre-arranged SMS script. On information and belief, a human did not insert Plaintiff's name into the pre-drafted SMS script.

37.     Between November 29, 2017 to April 26, 2018, GTP violated the TCPA by calling and texting Plaintiff without his express permission or consent.

38.     Between November 29, 2017 to April 26, 2018, GTP violated the TCPA by sending 26 text messages after Plaintiff stated during a telephone call to stop calling him.

39.     Between November 29, 2017 to April 26, 2018, GTP violated the TCPA by sending Plaintiff text messages after he told GTP though a text messages to stop texting him.

40.     As detailed below, Plaintiff wrote at least two text messages where he instructed GTP and/or GTP's agents to stop sending him text messages.

**SPECIFIC ALLEGATIONS RELATED TO THE SUBJECT TEXT MESSAGES**

41.     The below image is a screen capture of text messages that GTP sent to Plaintiff's cellular telephone number on **Wednesday, November 29, 2017, Monday, December 4, 2017, and Tuesday December 5, 2017**, where GTP sent the messages from (203)884-0946:



42.     The image on the following page is a screen capture of text messages that GTP sent to Plaintiff's cellular telephone number on **Wednesday, December 20, 2017,** and **Thursday, December 21, 2017**:

9

1
2
3
4
5
6
7
8
9
10

43.    The following image is a screen capture of text messages that GTP sent to

11
12
13

Plaintiff's cellular telephone number on **Thursday, December 21, 2017,** and **Saturday,**

**December 23, 2017**:

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28



44.     The following image is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular number on **Monday, December 25, 2017, Tuesday, December 26, 2017,** and **Wednesday, December 27, 2017** from (203)884-0946:



45.     In response to the messages identified in the above Paragraph, Plaintiff texted the following message to Defendant and/or Defendant's authorized agent:

"Not sure how you guys got my number.  Please stop texting me."

46.     As reflected by the above image, on **Wednesday, December 27, 2017**, GTP replied to Plaintiff's "Please stop texting me" text message with yet another automated/ATDS based text message which ignored Plaintiff's "stop texting me" text message.

47.    The following image is a screen capture of Plaintiff's **Wednesday December 27, 2017**, text message to GTD where Plaintiff again texted, "Please stop texting me.  I notified you guys of this over a month ago and you keep texting me.  Please stop":



48.    As reflected by the above screen capture image, GTD ignored Plaintiff's stop message request and instead transmitted two automated/ATDS based text messages to Plaintiff's cellular telephone number on **Wednesday, December 27, 2017** from (203)884-0946.

49.    The image on the following page is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **January 2, 2018** and **January 9, 2018** from (203)884-0946:



50.     The following image is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **January 13, 2018** and **January 18, 2018** from (203)884-0946:



51.    The following image is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **February 9, 2018** and **February 11, 2018,** from (203)884-0946:



52.    The image on the following page is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **February 24, 2018** from (203)884-0946:



53.    The image on the following page is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **March 4, 2018** from (203)884-0946:



54.     The image on the following page is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **March 14, 2018,** from (860)785-2145:



55.     The image on the following page is a screen capture of automated/ATDS based text messages that GTP sent to Plaintiff's cellular telephone number on **March 25, 2018, and April 6, 2018,** from (203)544-2866:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16



17   56.   The below image is a screen capture of automated/ATDS based text messages

18

19   that GTP sent to Plaintiff's cellular telephone number on **April 26, 2018,** from (860)785-2145:

20
21
22
23
24
25
26
27
28



57.     All of the above text messages violated the TCPA.

58.     Further, none of the text messages contained an opt-out line are a simple instruction to prevent or opt out of future messages such as saying "to no longer receive these messages, reply "STOP" or "Remove".

**COUNT I – Text Messages in Violation of the TCPA Prior to December 27, 2017**

59.     Plaintiff incorporates the above paragraphs as if fully set forth in this Count.

60.     As set forth above, Defendant's conduct violates Section 227(b)(1)(A) of the TCPA.

61.     Defendant sent at least eleven (11) unsolicited text messages without Plaintiff's express consent to Plaintiff's cellular phone on the following days from the following telephone number (203)884-0946:

> 11/29/17;
>
> 12/04/17;
>
> 12/08/17;

12/09/17;

12/14/17;

12/20/17;

12/21/17;

12/21/17;

12/23/17;

12/25/17;

(Christmas day); and 12/26/17.

62.     For each of these unsolicited text messages that were sent by Defendant without Plaintiff's consent, Plaintiff is entitled to at least $500 in compensation, for a total of $5,500 in relief.

63.     Plaintiff, however, is entitled to up to $1,500 per text message because the evidence will show that Plaintiff called and spoke with someone affiliated with or employed by Defendant and Plaintiff told this person to stop contacting him.

64.     Defendant's conduct in continuing to send unsolicited text messages to Plaintiff after he verbally told Defendant to stop doing evidences GTP's willful and knowing non-compliance with 47 U.S.C. § 227(b)(1)(A)(iii).

65.     On December 27, 2017, Plaintiff sent the following text message to Defendant: "Not sure how you guys got my number.  Please stop texting me".

66.     Despite this message, Defendant responded with another unsolicited text message on December 27, 2017, evidences GTP's willful and knowing non-compliance with 47 U.S.C. § 227(b)(1)(A)(iii).

67.     Further, none of the text messages contained an opt-out line are a simple instruction to prevent or opt out of future messages such as saying "to no longer receive these messages, reply "STOP" or "Remove".

68.     GTP has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) by texting the Plaintiff's number, which is obviously known to GTP to be assigned to a cellular telephone service.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages in the amount of at least $5,500 for the eleven unsolicited text messages (at $500 per message) and up to $16,500 for each message that occurred after Plaintiff verbally informed Dependent to stop texting him.

### COUNT II –Text Messages in Violation of the TCPA – After December 27, 2017

69.     Plaintiff incorporates the above paragraphs as if fully set forth in this Count.

70.     On December 27, 2017, Plaintiff sent the following text message to Defendant: "Not sure how you guys got my number.  Please stop texting me".

71.     Further, none of the text messages contained an opt-out line are a simple instruction to prevent or opt out of future messages such as saying "to no longer receive these messages, reply "STOP" or "Remove".

72.     GTP has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) because GTP contacted Plaintiff with at least 15 autodialed calls after Plaintiff texted GTP and told it to stop texting him.

73.     These offending calls are subject to treble damages pursuant to 47 U.S.C. §227(b)(3) as they were intentional, entitling Plaintiff to recover $1,500 for each unlawful text messages that were sent after Plaintiff's December 27, 2017, "stop texting me" request.

74.     GTP has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) because GTP contacted Plaintiff at least 15 times after Plaintiff sent text messages to GTP telling GTP to stop communicating with him.

75.     These unlawful messages occurred on the following dates from **203-884-0946** unless otherwise noted:

12/27/17;

01/02/18;

01/09/18;

01/13/18;

01/18/18;

02/03/18;

02/09/18;

02/11/18;

02/24/18;

03/04/18;

03/14/18 (from **860-788-4689**);

03/25/18 (from **203-544-2886**);

04/06/18 (from **203-544-2886**); and

04/26/18 (from **860-785-2145**).

76.     GTP demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) by continuing to text Plaintiff 15 more times after receiving notification from Plaintiff to stop which shows a total disregard and in violation of 47 U.S.C. §227.

77.     GTP's text messages were sent intentionally and therefore entitle Plaintiff to recover $1,500 per violation.

78.     GTP has demonstrated willful or knowing non-compliance with 47 U.S.C. §227(b)(1)(A)(iii) by texting the Plaintiff's number, which is obviously known to GTP to be assigned to a cellular telephone service.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages in the amount of $1,500 for each of the fifteen unsolicited text messages that were sent to him after he told Defendant to stop texting him in writing, for a total recovery of $22,500.

**COUNT III – Violations of the National Do-Not-Call Registry - 47 C.F.R. § 64.1200(e).**

79.     47 U.S.C. § 227(c) states that any individual who has received "more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the *regulations* prescribed under this subsection" to bring "an action to recover for actual monetary loss from *such a violation.*"  (emphasis added).

80.     Section 227(e) that that "[t]he rules set forth in paragraph (c) and (d) of this section are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers to the extent described in the Commission's Report and Order, CG Docket No. 02-278, FCC 03-153, 'Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991.'"

81.     Plaintiff is registered on the National Do-Not-Call Registry.

82.     Defendant sent Plaintiff unsolicited telemarketing based text messages despite Plaintiff's registration on the National Do-Not-Call Registry.

83.     Accordingly, twenty-five of Defendant's twenty-six text messages violated the National Do-Not-Call Registry and therefore violated Section 227(e) of the TCPA.

**WHEREFORE**, Plaintiff demands judgment against Defendant for damages in the amount of $1,500 for each of Defendant's violation of the National Do-Not-Call Registry, for a total recovery of $37,500.

### COUNT IV – California Do-Not-Call Registry

84.     Cal. Bus & Prof. Code § 17592(c)(4) prohibits telemarketers from making telephone calls to California telephone numbers that are listed on the California Do-Not-Call registry to "promote any investment, insurance, or financial services."

85.     Plaintiff is registered on the California Do-Not-Call Registry.

86.     Defendant sent Plaintiff unsolicited telemarketing based text messages despite Plaintiff's registration on the California Do-Not-Call Registry.

87.     Accordingly, twenty-five of Defendant's twenty-six text messages **violated** the California Do-Not-Call Registry.

**WHEREFORE,** Plaintiff demands judgment against Defendant for damages in the amount of $500 for each of Defendant's violation of the California Do-Not-Call Registry, for a total recovery of $12,500.

**PLAINTIFF DEMANDS A JURY TRIAL**

Date: February 26, 2019                              Respectfully submitted,


By: */s/ Nicholas M. Wajda*

Nicholas M. Wajda
**WAJDA LAW GROUP, APC**
11400 West Olympic Boulevard
Suite 200M
Los Angeles, California 90064
Telephone: 310-997-0471
Facsimile: 866-286-8433
E-mail: nick@wajdalawgroup.com